**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

EXPRESS MOBILE, INC.,

                    *Plaintiff*,

          v.

GOOGLE LLC,

                    *Defendant*.

Civil Action No. 6:20-cv-00804-ADA

## DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

## TABLE OF CONTENTS

Pages

INTRODUCTION ...................................................................................................................1

I.      BACKGROUND .............................................................................................................2

       A.     Judge Seeborg Has and Will Continue to Extensively Analyze the Asserted Patents. ...................................................................................2

       B.     Google's Witnesses and Documents Are Not in WDTX.........................3

       C.     Plaintiff Express Mobile Is Based in NDCA and Has No Ties to WDTX. ............4

       D.     The Majority of Relevant Third-Party Witnesses Are Located in or Near NDCA. ...........................................................................................4

II.     LEGAL STANDARD .....................................................................................................6

III.    THIS CASE COULD HAVE BEEN FILED IN NDCA. ..................................................7

IV.    NDCA IS CLEARLY MORE CONVENIENT THAN WDTX.........................................7

       A.     The Conservation of Judicial Resources Weighs Heavily in Favor of Transfer. .........................................................................................7

       B.     The Other Private Interest Factors Also Favor Transfer........................................10

             1.     Cost of Attendance for Willing Witnesses Favors Transfer. ....................10

             2.     Relative Ease of Access to Sources of Proof Favors Transfer..................11

             3.     Availability of Compulsory Process to Secure the Attendance of Witnesses Heavily Favors Transfer. .....................................12

       C.     The Public Interest Factors Also Favor Transfer. ...................................................13

             1.     Administrative Difficulties Flowing from Court Congestion Are Neutral......................................................................................13

             2.     Local Interest Favors Transfer. ................................................................14

             3.     The Courts' Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Favor Transfer.........................................................................15

V.     CONCLUSION...............................................................................................................15

i

**TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Affinity Labs of Texas, LLC v. Samsung Elecs. Co., Ltd.*,
No. 6:13-cv-364, 2014 WL 12570501 (W.D. Tex. June 11, 2014) ............................ 9, 14

*Aventis Pharm Inc. v. Teva Pharm. USA Inc.*,
No. 6-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) ................................................ 8

*Datascape Ltd. v. Dell Techs., Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ..................... 15

*DataTreasury Corp. v. First Data Corp.*,
243 F. Supp. 2d 591 (N.D. Tex. 2003) .............................................................................. 8

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
No. 6:12-CV-00783, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013) .............................. 14

*Express Mobile, Inc. v. Code & Theory LLC*, No. 18-cv-04679-RS ............................................ 2

*Express Mobile, Inc. v. Facebook Inc.*,
6:20-cv-00803-ADA (filed Jan. 5, 2021) .......................................................................... 9

*Express Mobile, Inc. v. Pantheon Sys., Inc.*,
 Case No. 18-cv-04688-RS, 2019 WL 477639 (N.D. Cal. Jan. 29, 2019) ........................ 2

*Express Mobile, Inc. v. Svanaco, Inc.*,
No. 2:17-cv-00130-JRG-RSP, 2018 WL 746472 (E.D. Tex. Feb. 7, 2018) ..................... 1

*Express Mobile, Inc. v. Wix.com, Ltd. et al.*,
No. 3:19-cv-06559-RS (N.D. Cal. Oct. 11, 2019) ............................................................ 3

*Front Row Techs., LLC v. MLB Advanced Media, L.P.*,
No. 12-1639, 2012 WL 12044383 (N.D. Tex. Dec. 17, 2012) .......................................... 8

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
No. 6:19-cv-00355-ADA, 2020 WL 6136783 (W.D. Tex. Mar. 30, 2020)..................... 11

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011).......................................... 14

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) .................................................................... 10, 13, 14

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. June 16, 2020) .................................................................... 7

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ....................................................................... 10, 11, 14, 15

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ................................................................................ 13

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 10, 11

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ...................................................................................... 15

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ................................................................................ 14

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ................................................................................. 6, 12

*In re Rembrandt Techs. LP Patent Litig.*,
899 F.3d 1254 (Fed. Cir. 2018) ....................................................................................... 5

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014) ................................................................................. 6, 10

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ......................................................................................... 10

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ................................................................................... passim

*In re Zimmer Holdings Inc.*,
609 F.3d 1378 (Fed. Cir. 2010) ..................................................................................... 15

*InMotion Imagery Techs., LLC v. Imation Corp.*,
No. 2:12-CV-298-JRG, 2013 WL 1279055 (E.D. Tex. Mar. 26, 2013) ......................... 14

*Jackson v. Intel Corp.*,
No. 2:08-cv-154, 2009 WL 749305 (E.D. Tex. Mar. 19, 2009) ........................................ 8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
No. 2:04-cv-359, 2006 WL 887391 (E.D. Tex. Mar. 28, 2006) ........................................ 8

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997) ....................................................................................... 6

*Shopify (USA), Inc. v. Express Mobile, Inc.*,
No. 19-MC-80251-TSH, 2019 WL 5893235 (N.D. Cal. Nov. 12, 2019) ..................... 5, 13

iv

*Shopify Inc. v. Express Mobile, Inc.*,
　　No. 19-cv-439-RGA, 2020 WL 3432531 (D. Del. June 23, 2020)..................................... 1

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　　649 F.3d 1276 (Fed. Cir. 2011)........................................................................................ 5

*Uniloc USA Inc. v. Box, Inc.*,
　　No. 1:17-cv-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ................................ 7

*VLSI Tech. LLC v. Intel Corp.*,
　　No. 6:19-CV-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019)....................... 10

*X.Commerce, Inc. v. Express Mobile, Inc.*,
　　No. 17-CV-02605-RS, 2018 WL 10704439 (N.D. Cal. Sept. 12, 2018)........................... 2

## <u>STATUTES</u>

28 U.S.C. § 1400(b) ................................................................................................................. 7

28 U.S.C. § 1404(a) ........................................................................................................ 1, 6, 10

## <u>RULES</u>

Fed. R. Civ. P. 45(c) ............................................................................................................... 12

## <u>INTRODUCTION</u>

Defendant Google LLC ("Google") requests that the Court transfer this action to the Northern District of California (NDCA) pursuant to 28 U.S.C. § 1404(a).  Judicial economy makes this case uniquely appropriate for transfer to NDCA.  Plaintiff Express Mobile, Inc. ("Express Mobile") has asserted the *same five patents*[1] in *28* different cases in NDCA—a first flight of cases in 2017–2018, a second flight in 2019, a third flight in September 2020, and, after filing this case in WDTX, a fourth flight in November/December 2020.  The Honorable Richard Seeborg of NDCA has presided over 27 of those cases for over 4 years—holding multiple conferences, resolving motions, and construing the claim terms.  In five decisions, NDCA has analyzed the asserted claims and made numerous factual and legal determinations.[2]  Indeed, in one case (*X.Commerce*), Judge Seeborg construed the claims in 2018, received motions for summary judgment and to strike expert testimony in December 2020, and scheduled trial for June 2021. And in another (*Wix.com*), Judge Seeborg will preside over a claim construction hearing in March 2021.  Thus, Judge Seeborg is already familiar with relevant issues.  Transferring this case to NDCA, where it likely would be assigned to Judge Seeborg because he is presiding over *nine* other pending cases involving the same asserted patents, would conserve judicial resources and avoid inconsistent results.

---

[1] U.S. Patent Nos. 6,546,397; 7,594,168; 9,063,755; 9,471,287; and 9,928,044 (together, the "Asserted Patents").

[2] Other courts have also handled substantive aspects of these Express Mobile cases.  *See, e.g.*, *Express Mobile, Inc. v. Svanaco, Inc.*, No. 2:17-cv-00130-JRG-RSP, 2018 WL 746472 (E.D. Tex. Feb. 7, 2018) (construing terms in the '397 and '168 patents); *Shopify Inc. v. Express Mobile, Inc.*, No. 19-cv-439-RGA, 2020 WL 3432531 (D. Del. June 23, 2020) (construing terms in all five Asserted Patents).  But as explained in this motion, NDCA has done so most frequently—and, given the sheer number (over two dozen cases) that Express Mobile has filed in that District both historically and very recently, NDCA will continue to have significant insight and familiarity with the same issues in dispute in this case.

In addition, both Google and Express Mobile have significant ties to NDCA.  Google has been headquartered in NDCA since its founding in 1998.  The Google employees responsible for the accused functionalities[3] are in NDCA or New York; none are in WDTX.  The first named inventor (who is also Express Mobile's founder, current CTO, and former CEO) also resides in NDCA and has represented in other contexts that he would have difficulty traveling from there.  Crucially, most known third-party witnesses with relevant information are also located in NDCA.  And Express Mobile cannot claim any burden trying this case in NDCA—to the contrary, it chose to file 28 lawsuits there, including all eight of its most recent cases.

By contrast, this case has no relevant connection to WDTX.  Express Mobile has no offices or employees in, or ties to, this District.  Likewise, Google is not aware of any employees in WDTX that are responsible for the accused functionalities.   Nor are any known third-party witnesses in WDTX.  Under these circumstances, NDCA is clearly more convenient.

## I.      BACKGROUND

### A.      Judge Seeborg Has and Will Continue to Extensively Analyze the Asserted Patents.

In 2018, Judge Seeborg of NDCA construed eleven terms of the '397 and '168 Asserted Patents.  *X.Commerce, Inc. v. Express Mobile, Inc.*, No. 17-CV-02605-RS, 2018 WL 10704439 (N.D. Cal. Sept. 12, 2018).  (Chen Decl. ¶ 5.)  In that case, Judge Seeborg also received motions for summary judgment and to strike expert testimony in December 2020, and scheduled trial for June 2021.  (*Id.*)  In January 2019, Judge Seeborg evaluated the '397 and '168 patents' eligibility under §101.  (*Id.* ¶ 6); *Express Mobile, Inc. v. Code & Theory LLC*, No. 18-cv-04679-RS, *Express Mobile, Inc. v. Pantheon Sys., Inc.*, Case No. 18-cv-04688-RS, 2019 WL 477639 (N.D. Cal. Jan. 29, 2019).  In *Express Mobile, Inc. v. Wix.com, Ltd. et al.*, No. 3:19-cv-06559-RS (N.D. Cal. Oct.

---

[3] The accused functionalities are part of Google Docs, Google Slides, and Google Ads.

11, 2019), which involves the same five Asserted Patents, Judge Seeborg has held two case management conferences and will hold a claim construction hearing in March 2021.  (Chen Decl. ¶ 8.)

Judge Seeborg of NDCA is presiding over nine active litigations involving Express Mobile and the Asserted Patents (*id.* ¶ 13) and Express Mobile itself has indicated that the new cases filed in September, November, and December 2020 are related (1) to each other and (2) to the earlier Express Mobile cases (*id.* ¶ 10).  In one of those cases, *Microsoft*, which was filed the same day as this case, Judge Seeborg has already held a case management conference and set deadlines, including a claim construction hearing in June 2021.  (*Id.* ¶ 11.)  For the cases filed in November/December 2020 (after this case was filed), Judge Seeborg has already set case management conferences for February/March 2021.  (*Id.* ¶ 12.)

## B.  Google's Witnesses and Documents Are Not in WDTX.

Express Mobile alleges that certain functionalities of Google Docs, Google Slides, and Google Ads infringe the five Asserted Patents.  (*See* Dkt. No. 32 ("Am. Compl.") ¶¶ 53-61, 68-83, 89-105, 112-125, 132-143.)  Google's Mountain View, California headquarters[4]—the strategic center of Google's business—is located in NDCA, and has been since its founding in 1998.  (*See* Declaration of Andre Golueke in Support of Motion to Transfer ("Golueke Decl.") ¶¶ 2, 3.)  Google's Mountain View headquarters is its largest location of U.S. employees.  (*Id.* ¶ 3.)  The majority of Google's U.S. employees work in various offices in NDCA.  (*Id.*)  Google has no offices in the Waco Division of WDTX.  (*See* Chen Decl. ¶ 15.)  Although Google has an office in Austin, Texas, it houses only a very small fraction of Google's U.S. employees, and Google has not identified any employees in Texas who have worked on the design and development of the

---

[4] Google's Mountain View headquarters includes offices in neighboring Sunnyvale, California (collectively "Mountain View").  (Golueke Decl. ¶ 3.)

accused functionalities.  (Golueke Decl. ¶ 5.)   For Google Ads and Google Docs/Slides, the most likely witnesses responsible for the accused functionalities are based in the San Francisco Bay Area, California, and New York City, respectively.  (Golueke Decl. ¶¶ 5.ii, 5.i.)

### C.   Plaintiff Express Mobile Is Based in NDCA and Has No Ties to WDTX.

Express Mobile is a Delaware corporation with a primary place of business in NDCA. (Am. Compl. ¶ 2; Chen Decl. ¶ 19.)  Specifically, Express Mobile is a non-practicing entity based in Novato, California.  (*See* Am. Compl. ¶ 2; Chen Decl. ¶ 19, 21; *see also id.* ¶ 20 (forfeiture of Express Mobile's registration in Texas)).  And in NDCA, Express Mobile has ten ***active*** litigations involving the Asserted Patents.[5]  (*Id.* ¶ 13.)  Express Mobile provides no indication that it has ***any*** connection to WDTX, nor that it is aware of any evidence in this District.  Express Mobile's current employees, including Steven Rempell[6] (founder, named inventor on all five asserted patents, current CTO, and former CEO), Jeff Samuelson (CEO and Director), and Cheryl Kudelka (CFO), reside in NDCA.  (*Id.* ¶¶ 21-24, 40-41.).   None of the members listed on the Express Mobile website appear to reside in WDTX, nor is Google aware of any potential Express Mobile witnesses or documents located in WDTX.  (*Id.* ¶¶ 21-29, 45.)  And Mr. Rempell has stated that, due to his age and a prior accident, long distance travel—for example, from his NDCA residence to other states—is difficult for him.  (*Id.* ¶ 42.)

### D.   The Majority of Relevant Third-Party Witnesses Are Located in or Near NDCA.

Third parties relevant to this lawsuit are located in NDCA, not WDTX.  These NDCA-based third-party witnesses can be compelled to testify at trial in NDCA, but not here.

---

[5] Express Mobile has also asserted the same patents in the Eastern District of Texas, but all of those actions have been dismissed.  (Chen Decl. ¶ 14.)

[6] Each asserted patent lists Steven H. Rempell as the first inventor and identifies Mr. Rempell as a resident of Novato, California, which is in NDCA.  (Dkt. Nos. 32-1, 32-2, 32-6, 32-7, 32-8.)

First, two of the named inventors are now third parties who reside in NDCA: Ken Brown and Dave Chrobak.  (*Id.* ¶¶ 35-37.)  Mr. Brown is a named inventor on three of the asserted patents, and was Express Mobile's VP of Product Development from 2005 to 2011.  (*Id.* ¶¶ 35-36.)  The same three patents also name another inventor, Mr. Chrobak, who was the lead software engineer at Express Mobile from 2007 to 2008.  (*Id.* ¶¶ 35, 37.)  Mr. Brown and Mr. Chrobak will likely have pertinent testimony about the conception of the claimed invention, the meaning of the asserted claims, the technology behind the patents, and what was invented and claimed.  (*Id.* ¶ 44.)

Second, Express Mobile's former attorneys, who have information relevant to whether the '397 patent is unenforceable due to inequitable conduct, are also in NDCA.  These attorneys, James Drapinski and Steven Vosen, are based in Menlo Park and Alameda, California, respectively. (*See id.* at 28-29, 44.)  They were responsible for the lapse of the maintenance fee of the '397 patent and subsequent revival, and were subpoenaed by Shopify to testify on these issues.  *See Shopify (USA), Inc. v. Express Mobile, Inc.*, No. 19-MC-80251-TSH, 2019 WL 5893235 (N.D. Cal. Nov. 12, 2019).  Their testimony is relevant to Google's potential defense that the patents may be unenforceable due to inequitable conduct.[7]  And, after considering Mr. Vosen's testimony in *Shopify*, NDCA found that Mr. Drapinksi may also have relevant information.  *Id.*

Third, DSS, which has an NDCA office, has taken an ownership interest in Express Mobile and has licensed Express Mobile's technology.  (*See* Chen Decl. ¶¶ 30-33.)  Indeed, the relationship between DSS and Express Mobile will be important to explore at trial because DSS

---

[7] A patent is unenforceable if the owner engages in inequitable conduct by improperly certifying to the Patent Office that the failure to pay maintenance fee was unintentional.  *Shopify (USA), Inc. v. Express Mobile, Inc.*, No. 19-MC-80251-TSH, 2019 WL 5893235, at *2 (N.D. Cal. Nov. 12, 2019); *see In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272-75 (Fed. Cir. 2018); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) ("Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent.").

was involved in at least one of Express Mobile's patent infringement actions—against the Alibaba Group.  (*See id.* ¶ 34.)

Fourth, Akira Technologies, Inc. ("Akira"), which is also based in NDCA, is the assignee on the face of the '168 patent and was the second assignee of the '397 patent.  (*See id.* ¶¶ 47-48). If Akira still has evidence relevant to the conception and ownership of the patents, it would likely be in NDCA.

Finally, Google is not currently aware of any relevant third-party witnesses in WDTX.

## II.    LEGAL STANDARD

To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted).  If so, the court weighs eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interest decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (citation omitted).  Where the interests of judicial economy strongly favor transfer, the Federal Circuit has held that other factors may be "afforded little or no weight."  *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).  The transferee forum is "clearly more convenient" where most potential witnesses and relevant evidence are concentrated in the transferee district.  *See In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).  The presence of witnesses and evidence outside both fora does not factor into the analysis. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).  Further, a plaintiff's choice

of venue is not an independent factor. *Volkswagen II*, 545 F.3d at 314 n.10.  Nor should courts draw reasonable inferences or resolve factual conflicts in favor of the plaintiff because "[t]he plaintiff's choice of forum is already protected by the elevated 'clearly more convenient' standard." *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. June 16, 2020).

### III.    THIS CASE COULD HAVE BEEN FILED IN NDCA.

The threshold requirement for a transfer of venue is met here: Express Mobile could have brought this action in NDCA, where Google is headquartered and from where it offers the instrumentalities identified in Express Mobile's infringement allegations. *See* 28 U.S.C. § 1400(b).

### IV.    NDCA IS CLEARLY MORE CONVENIENT THAN WDTX.

Analyzing the transfer factors demonstrates that litigating this case in NDCA would be clearly more convenient than litigating in WDTX: seven factors favor transfer, one is neutral, and ***no*** factors support litigating in WDTX.  Under these facts, transfer is warranted.

| Factor | More Convenient Venue |
|---|---|
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | NDCA (§IV.A) |
| Cost of attendance for willing witnesses | NDCA (§IV.B.1) |
| Relative ease of access to sources of proof | NDCA (§IV.B.2) |
| Availability of the compulsory process | NDCA (§IV.B.3) |
| Administrative difficulties flowing from court congestion | Neutral (§IV.C.1) |
| Local interest in having localized interests decided at home | NDCA (§IV.C.2) |
| Familiarity of the forum with the law that will govern the case | NDCA (§IV.C.3) |
| Avoidance of unnecessary problems of conflict of laws | NDCA (§IV.C.3) |

### A.    The Conservation of Judicial Resources Weighs Heavily in Favor of Transfer.

This private interest factor considers any practical problems, with a focus on "considerations of judicial economy and the existence of co-pending litigation," *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-cv-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018).  "Transfer is particularly appropriate where related cases involving the same issues are pending in another

court." *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003). Indeed, courts in this Circuit have repeatedly recognized the importance of previously-filed litigation of related patents in other districts in transferring cases to those districts.[8]

The conservation of judicial resources weighs heavily in favor of transferring this case to NDCA.  If transferred to NDCA, this case likely would be assigned to Judge Seeborg, who is currently presiding over ***nine*** related cases.[9]  *See* N.D. Cal. Local Rule 3-12 on Related Cases. Because Judge Seeborg has extensive familiarity with this patent family, as well as their underlying technology and the issues involved, transfer would ensure that overlapping issues, such as the validity and proper scope of the claims, are heard by the same judge that presided over earlier cases involving the same patent family.  *See supra* Section I.A; *Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 WL 749305, at *4 (E.D. Tex. Mar. 19, 2009) ("[T]he knowledge and experience that the judges of that district have developed with respect to the [asserted patent] cannot easily be replicated in this district without a substantial duplication of effort.").  Transferring this case to NDCA would avoid increased expense, redundant efforts, and potential inconsistencies that could result from proceeding with this case here.

---

[8] *See, e.g., Front Row Techs., LLC v. MLB Advanced Media, L.P.*, No. 12-1639, 2012 WL 12044383, at *5 (N.D. Tex. Dec. 17, 2012) (holding that overall interest of justice supported transfer and expressing concern about potential inefficiencies, inconsistencies, and increased expense that could result from piecemeal litigation where four related patents were already being litigated in the proposed transferee district); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, No. 2:04-cv-359, 2006 WL 887391 (E.D. Tex. Mar. 28, 2006) (finding that the interests of justice support transfer where the first-filed suit involving a related patent was pending in N.D. Cal.); *Aventis Pharm Inc. v. Teva Pharm. USA Inc.*, No. 6-469, 2007 WL 2823296, at *2 (E.D. Tex. Sept. 27, 2007) (transferring case where plaintiff's prior suits accusing related patents were pending in another district where the judge had "extensive familiarity" with the parties, accused product, theories of infringement, and prior art references and because it appeared plaintiff filed suit in a different forum because suit presented same issues that were unsuccessfully presented before prior judge).

[9] Indeed, Judge Seeborg is presiding over six out of seven actions that Express Mobile recently filed, in accordance with NDCA Local Rule 3-12.  *See supra* Section I.A.

Courts in this district have ordered transfer under similar circumstances. In *Affinity Labs of Texas, LLC v. Samsung Elecs. Co.*, *Ltd.*, the Court transferred a case to NDCA, which had a pending lawsuit on related patents and was familiar with the patents. No. 6:13-cv-364, 2014 WL 12570501, at *2 (W.D. Tex. June 11, 2014). Here, the facts favor transfer even more strongly because the patents are not just related; they are the *same* patents in the pending NDCA lawsuits. In *Affinity Labs*, the Court noted that the transfer "will reduce a waste of judicial resources, given the similarities between the patents and accused products." *Id.* at *8. Here, transfer is also warranted. As in *Affinity*, the transferee district is more familiar with the Asserted Patents. Further, NDCA is overseeing ten pending cases on the Asserted Patents. Thus, transfer is appropriate, as "[a] single court overseeing [related] cases 'would avoid wasteful duplication of effort by two courts on essentially the same issues.'" *Id.* (citation omitted).

Although related cases are also pending in other districts including NDCA, Delaware, and the Middle District of Florida, transferring this case to NDCA consolidates more of these related cases in existing venues, and the facts here do not support transfer to Delaware or the Middle District of Florida. As for the judicial resources of this Court, this case is still in its infancy and has not yet required significant resources from this Court. The Court decided that no case management conference was necessary, set a claim construction hearing for August 3, 2021 (two months after the NDCA *Microsoft* claim construction hearing), and an estimated trial date for September 12, 2022. Also, Facebook, one of the other defendants in this District, has also moved to transfer to NDCA, so there may soon be fewer co-pending litigations in WDTX. *See Express Mobile, Inc. v. Facebook Inc.*, 6:20-cv-00803-ADA, Dkt. No. 25 (filed Jan. 5, 2021). Where the interests of judicial economy so strongly favor transfer, the Federal Circuit has held that other factors may be "afforded little or no weight." *See Eli Lilly*, 119 F.3d at 1565. Therefore, the Court

may transfer solely on the basis of judicial economy here.  To the extent the Court finds it necessary to analyze the remaining factors, they are addressed in turn below.

### B.     The Other Private Interest Factors Also Favor Transfer.

#### 1.     Cost of Attendance for Willing Witnesses Favors Transfer.

This factor considers cost of attendance for willing party and non-party witnesses.  *In re Genentech, Inc.*, 566 F.3d 1338, 1343–45 (Fed. Cir. 2009).  When considering the convenience of witnesses, "the relative convenience to key witnesses is accorded greater weight[.]"  *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949 at *4 (W.D. Tex. Oct. 7, 2019).  Courts in the Fifth Circuit apply the "100-mile" rule: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).  That said, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses . . . in places outside both forums."  *In re Toyota Motor Corp.*, 747 F.3d at 1340; *see also In re Adobe Inc.*, 823 F. App'x 929, 931-32 (Fed. Cir. 2020).[10]  And in *Genentech*, the Federal Circuit—applying Fifth Circuit law—held that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify."  *Genentech*, 566 F.3d at 1344.  Thus, witnesses traveling from the East Coast would be only "slightly more inconvenienced by having to travel to California" than to Texas.  *Id.* at 1348; *see also In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020).  This factor overwhelmingly favors transfer to NDCA.

---

[10] Pursuant to *In re Toyota*, Google employees who work on the accused functionalities in New York City do not factor into the transfer analysis.  *See* 747 F.3d at 1340.

Google has not identified any employees who have worked on the design or development of the accused functionalities in Texas, much less WDTX.  *See supra* Section I.B.  In fact, the key party witnesses are based in NDCA and New York City.  *Id.*  These witnesses are responsible for the accused functionalities, and can describe how the accused functionalities work.  For witnesses in NDCA, attending trial within NDCA is clearly more convenient than traveling to WDTX.  For witnesses in New York, the Federal Circuit has held that New Yorkers would only be slightly more inconvenienced by having to travel to California than to Texas.  *In re Apple*, 979 F.3d at 1342 (citing *Genentech*, 566 F.3d at 1344, 1348)).  As for Express Mobile, the majority of its members, including inventor Steve Rempell, reside in NDCA.  *Id.*  In fact, Express Mobile has filed 28 cases in NDCA over the past five years; and it voluntarily agreed to transfer another case from EDTX to NDCA, indicating that NDCA is convenient to it and its witnesses.  (*See* Chen Decl. ¶¶ 2-4, 7, 9.)  Furthermore, Google is unaware of any Express Mobile employees residing in this District.  As for key non-party witnesses, to the extent they are willing to testify, attending trial within NDCA is also clearly more convenient than WDTX because two non-party inventors, a licensee, and Express Mobile's predecessor all reside in NDCA.  *See supra* Section I.D.

Because a substantial number of willing, material witnesses reside within NDCA, and no known witnesses reside in WDTX, this important factor overwhelmingly favors transfer.  *Genentech*, 566 F.3d at 1345; *see also Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-cv-00355-ADA, 2020 WL 6136783 at *3–4 (W.D. Tex. Mar. 30, 2020).

### 2.     Relative Ease of Access to Sources of Proof Favors Transfer.

This factor considers the ease of access to sources of proof.  Even though technology permits the digital transfer of documents, courts still look to where documentary evidence is stored.  *See In re Volkswagen*, 545 F.3d at 316.  "In patent infringement cases, . . . the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Nintendo*, 589

11

F.3d at 1199.  As a matter of Google practice, documents in Google's possession about its products and services are normally created and maintained by the employees working on those products and services.  (Golueke Decl. ¶ 6.)  For Google Ads and Google Docs/Slides, relevant documents in this case primarily would be created and maintained in the San Francisco Bay Area, California, and New York City, respectively.  (*Id.*)

As for Express Mobile, it maintains its headquarters in NDCA, where it was founded in 2006.  Similarly, Akira, the original assignee of two of the patents, is also based in NDCA.  The named inventors also conducted their work in NDCA.  Records about the development of the claimed subject matter, prosecution of patents, and other relevant information within the custody of Express Mobile, Akira, or the inventors would therefore be in NDCA. (*See* Chen Decl. ¶ 46.)  Further, as Express Mobile does not even have offices in this District, there is no indication that **any** documentary evidence is in WDTX.  Thus, the location of documents favors transfer.  *See Genentech*, 566 F.3d at 1345–46.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses Heavily Favors Transfer.

Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business.  Fed. R. Civ. P. 45(c).  Thus, courts in this District cannot compel the third-party witnesses identified by Google—or any known third-party witnesses—to attend trial.  Here, this factor weighs substantially in favor of transfer to NDCA as it is a venue that has "absolute subpoena power for both depositions and trial." *Volkswagen II*, 545 F.3d at 316.  Google is not aware of any third-party witnesses in WDTX.  In contrast, there are six third-party witnesses with relevant information about this suit who are within the subpoena power of NDCA, but not within this District's subpoena power.  *See supra* Section

I.D; *see also Genentech*, 566 F.3d at 1343–44 (a defendant need only show that potential witnesses have "relevant and material information").  Ken Brown and Dave Chrobak, who are both in NDCA, are indisputably relevant, as they are both named inventors of three asserted patents. (Chen Decl. ¶¶ 35, 44.)  And NDCA already decided that Express Mobile's former attorneys, James Drapinski and Steven Vosen, who are in NDCA and had both been subpoenaed in *Shopify*, have relevant testimony about whether the '397 patent is unenforceable due to inequitable conduct. *See supra* Section I.D.  Similarly, DSS, which has an office in NDCA, likely has testimony relevant to licensing and ownership, and would likely be unwilling to attend this trial.  *Id.*

Given the inability to compel these third-party witnesses to testify at trial in WDTX, and because Google is not aware of **any** non-party witnesses in this District, this factor substantially favors transfer.  *See In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("*Apple I*") (holding that this factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue").

### C. The Public Interest Factors Also Favor Transfer.

#### 1. Administrative Difficulties Flowing from Court Congestion Are Neutral.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *Genentech*, 566 F.3d at 1347.  As the "most speculative" factor, it should not be given dispositive weight, and thus cannot prevent transfer where "several relevant factors weigh in favor of transfer and others are neutral."  *Genentech*, 566 F.3d at 1347; *see In re Adobe Inc.*, 823 F. App'x at 932.  A faster time to trial is only relevant if it is due to a "less crowded docket" that shows "an appreciable difference in docket congestion between the two forums."  *Id.*  A "court's general ability to set a schedule" does not "directly speak[] to that issue."  *Id.*  Multiple district courts in this circuit have held that a "few months" difference in

median time to trial is "not sufficiently significant" to favor or disfavor transfer.  *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-CV-00783, 2013 WL 8360309, at \*9 (E.D. Tex. Aug. 27, 2013) (quoting *InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:12-CV-298-JRG, 2013 WL 1279055, at \*4 (E.D. Tex. Mar. 26, 2013) (same for "4.7 months" difference)).  *In re Adobe* confirms this line of cases and confirms that this factor is neutral here.

There is no "appreciable difference" in court congestion between NDCA and WDTX.  The two fora have similar median times to trial for patent cases. (*See* Chen Decl. ¶¶ 49-50 (28.3 months in NDCA versus 31.1 months in WDTX)).  This Court's scheduling order will result in a timely trial, *see Voxer*, 2020 WL 3416012 at \*6, but that fact does not "directly speak[] to [the] issue" of court congestion, *In re Adobe*, 823 F. App'x at 932.  And any difference is not sufficiently "appreciable" to disfavor transfer.  *Id.*  This factor is therefore neutral.

## 2. Local Interest Favors Transfer.

NDCA has a strong local interest in this dispute: Google was founded in NDCA, where it still maintains its headquarters, and where it developed many of the relevant features in the accused functionalities.  *See Volkswagen II*, 545 F.3d at 316; *Affinity Labs of Tex. LLC*, 2014 WL 10748106, at \*3.  This factor focuses on the "significant connections between a particular venue and *the events that gave rise to a suit*."  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011) (emphasis added); *see also Volkswagen II*, 545 F.3d at 318 (explaining that this factor pertains to a forum's "connections with the events that gave rise to th[e] suit").  For example, where accused products are developed in the proposed venue, this factor weighs at least slightly in favor of transfer because "more of the events giving rise to this suit appear to have occurred in [the proposed venue] than in [the original venue]—specifically, the development of the accused products."  *In re HP Inc.*, 826 F. App'x 899, 901, 904 (Fed. Cir. 2020); *In re Apple Inc.*, 979 F.3d at 1345 (Fed. Cir. 2020).  Google designed and developed the accused

14

functionalities primarily in NDCA and New York, and it is these Google employees' work and reputation that has been called into question.  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  Indeed, even the plaintiff corporation and named inventors are in NDCA, and it is their claimed invention that gave rise to the Asserted Patents.

In contrast to the significant connection between this litigation and NDCA, there is no meaningful connection to WDTX.  None of the Google employees with responsibilities related to the accused functionalities resides in Texas, and Google's presence in Austin with respect to other products and technologies does not signify a local interest in this case.  *In re Apple Inc.*, 979 F.3d at 1345.  Express Mobile's connection to WDTX is nonexistent.  It has no office here and no witnesses in this District.  Indeed, its connection to WDTX "appears to be . . . ephemeral, and an artifact of litigation," which weighs in favor of transfer.  *In re Zimmer Holdings Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see supra* Section I.B.  Google is also not aware of any evidence suggesting that the Asserted Patents were developed in this District.  Therefore, the local interest factor "strongly favors transfer."  *See Datascape Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019).

### 3. The Courts' Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Favor Transfer.

The courts in WDTX and NDCA are both familiar and experienced with patent litigation issues.  But NDCA (and Judge Seeborg, in particular) is familiar with the facts and prior legal rulings related to *these* Asserted Patents.  Transferring this case to NDCA thus would both conserve judicial resources and avoid any potentially inconsistent rulings.

### V. CONCLUSION

This suit has no connection to the Waco Division of WDTX.  Google respectfully requests the Court transfer this case to NDCA.

15

Dated: January 25, 2021

Respectfully submitted,

*/s/ Ameet A. Modi*

MANN, TINDEL, THOMPSON

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
201 E. Howard St.
Henderson, Texas 75654
Telephone: 903-657-8540
Facsimile: 903-657-6003

DESMARAIS LLP

Ameet A. Modi (*pro hac vice*)
Emily H. Chen (*pro hac vice*)
101 California Street
San Francisco, California 94111
T: (415) 573-1900
F: (415) 573-1901
amodi@desmaraisllp.com
echen@desmaraisllp.com

Karim Z. Oussayef (*pro hac vice*)
230 Park Avenue
New York, New York 10169
T: (212) 351-3400
F: (212) 351-3401
koussayef@desmaraisllp.com

*Attorneys for Defendant Google LLC*

16

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Defendant, Google LLC, conferred with counsel for Plaintiff, Express Mobile, Inc. on January 22, 2021 in a good-faith effort to resolve the matter presented herein and counsel for Plaintiff stated that it opposed the motion.

/s/ *Ameet A. Modi*

Ameet A. Modi

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via CM/ECF on January 25, 2021. I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing this document, under seal, pursuant to L.R. CV-5.2 on January 25, 2021.

/s/ *Ameet A. Modi*

Ameet A. Modi