**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| EXPRESS MOBILE, INC., | |
| Plaintiff, | Case No. 6:20-cv-801-ADA |
| v. | |
| EXPEDIA, INC. ET AL., | |
| Defendant. | |
| v. | |
| EBAY INC., | Case No. 6:20-cv-802-ADA |
| Defendant. | |
| v. | |
| FACEBOOK, INC. | Case No. 6:20-cv-803-ADA |
| Defendant. | |
| v. | |
| GOOGLELLC, | Case No. 6:20-cv-804-ADA |
| Defendant. | |
| v. | |
| ATLASSIAN CORP. PLC ET AL., | Case No. 6:20-cv-805-ADA |
| Defendant. | |

**DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

IL.     DISPUTED TERMS ........................................................................................... 1

    A.      "virtual machine" ................................................................................... 1

    B.      "at least one run time file" ................................................................... 3

    C.      "run time engine" / "runtime engine" ................................................... 5

    D.      "time lines" ............................................................................................ 6

    E.      "A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:" ............................................... 8

    F.      "Application" / "application" ................................................................ 9

    G.      "Player"/ "player" ................................................................................. 10

    H.      "registry" ............................................................................................... 12

    I.      "UI object" ............................................................................................ 14

    J.      "An authoring tool configured to ... a Player" .................................... 14

III.    CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.,*
   262 F.3d 1258 (Fed. Cir. 2001) ................................................................................5

*Bio-Rad Labys, Inc. v. J0XGenomics Inc.,*
   967 F.3d 1353 (Fed. Cir. 2020) ...............................................................................8

*Chimie v. PPG Indus., Inc.,*
   402 F.3d 1371 (Fed. Cir. 2005) ..............................................................................11

*Collaborative Agreements, LLC v. Adobe Sys. Inc.,*
   No. A-14-CV-356-LY, 2015 WL 2250391 (W.D. Tex. May 12, 2015) ...................8

*Digital Retail Apps., Inc. v. H-E-B, LP,*
   No. 6:19-cv-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) .................8

*Dure/ Corp. v. Osram Sylvania Inc.,*
   256 F.3d 1298 (Fed. Cir. 2001) ................................................................................8

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,*
   815 F.3d 1314 (Fed. Cir. 2016) .............................................................................. 12

*Express Mobile, Inc. v. GoDaddy. com,*
   No. l:19-cv-01937 (D. Del. June 1, 2021) (Ex. J at 17-19) .................................. 13

*Express Mobile, Inc. v. Svanaco, Inc.,*
   No. 2:17-CV-00130-JRG-RSP, 2018 WL 746472 (E.D. Tex. Feb. 7, 2018) ...........1

*Hill-Rom Co. v. Kinetic Concepts, Inc.,*
   209 F.3d 1337 (Fed. Cir. 2000) ................................................................................4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
   381 F.3d 1111 (Fed. Cir. 2004) ............................................................................6, 7

*Interpols Network Inc. v. Aura Interactive Inc.,*
   No. SACV 12-00832-NS, 2013 WL 12133639 (C.D. Cal. June 7, 2013) ...............6

*Medicines Co. v. Mylan, Inc.,*
   853 F.3d 1296 (Fed. Cir. 2017) ................................................................................7

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...............................................................2

*Purdue Pharma L.P. v. Endo Pharms. Inc.,*
  438 F.3d 1123 (Fed. Cir. 2006) ........................................................................ 11

*Shotkam LLC v. Tachyon, Inc.,*
  No. H-20-1070, 2021 WL 23311 (S.D. Tex. Jan. 4, 2021) ...................................... 15

*Sunovion Pharm., Inc. v. Teva Pharms. USA, Inc.,*
  731 F.3d 1271 (Fed. Cir. 2013) ........................................................................ 11

*Ventana Med. Sys., Inc. v. Biogenex Lab ys., Inc.,*
  473 F.3d 1173 (Fed. Cir. 2006) ........................................................................ 11

*X Commerce, Inc. v. Express Mobile, Inc.,*
  No. 17-cv-02605-RS, 2018 WL 10704439 (N.D. Cal. Sept. 12, 2018) ................................. 1, 7

**Other Authorities**

MPEP §608.0l(m) ................................................................................ 15

## I.    INTRODUCTION

The Court should adopt Defendants' proposed constructions, which are grounded in the intrinsic record.  Plaintiffs proposed constructions impermissibly seek to ignore the patentee's own admissions to the patent office in an attempt to improperly broaden the asserted claims. Plaintiffs approach should be rejected and the intrinsic record embraced through adoption of Defendants' constructions.

## II.    DISPUTED TERMS

### A. "virtual machine"

All of the evidence, including the evidence relied on by Plaintiffs expert here (and in other cases), indicate that at the time of the invention a "virtual machine" was understood to execute intermediate code.[1]  Schmandt Decl. ¶¶94–98, 111-12, 75.[2] That is why Judge Payne adopted that requirement, and why, respectfully, this Court should as well.  *Express Mobile, Inc. v. Svanaco, Inc.,* No. 2:17-CV-00130-JRG-RSP, 2018 WL 746472, at *5 (E.D. Tex. Feb. 7, 2018).[3] Plaintiffs reply brief and associated expert declaration confirm that none of the contemporaneous intrinsic or extrinsic evidence supports Plaintiffs attempt to separate "virtual machine" from intermediate code.  Schmandt Decl. ¶¶94–98, 111-12, 75; Weadock Supp. Decl. ¶ 19; Schmandt Supp. Decl. ¶ 10.  Rather than relying on the record at the time of the invention, Plaintiff instead relies on

---

[1] Plaintiff mistakenly contends that "Defendants define 'intermediate code' as 'more human-readable code written by a programmer." Reply at 4.  In fact, as Defendants' brief made clear, intermediate code is "code *derived from*" more human-readable code.  Resp. at 2 (emphasis added).

[2] For the Court's convenience, all pleadings for the actions pending before this Court refer to the filings in the Facebook matter (Case No. 6:20-cv-803): Pls.'s Opening Claim Constr. Br., ECF No. 57 ("Br."); Defs.'s Resp. Claim Constr. Br., ECF No. 61  ("Resp."); Pls.'s Reply Claim Constr. Br., ECF No. 64 ("Reply").

[3] Regarding Plaintiffs arguments about other Court's rulings on this term, only one court has disagreed with Defendants' proposed construction.  Indeed, contrary to Plaintiffs claim, the *X Commerce* court disagreed with a *narrower* construction than is proposed here.  Reply at 4 n.4.

sources post-dating the invention of the '397 patent by many years, including software like the V8 engine that did not exist as of the priority date.  Reply at 1 (citing Weadock Supp. Decl. ¶¶ 11-13); Schmandt Supp. Decl. ¶¶ 8-16, 21-22, 31, 41-42.  Plaintiffs reliance on these sources ignore the fundamental principle that the purpose of claim construction is to discern the meaning of terms "at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Tellingly, few sources from 1999 or earlier that Plaintiffs expert cites support Plaintiffs proposed construction.  Schmandt Supp. Decl. ¶¶ 17-20.

Plaintiff attempts to dismiss Defendants' expert's citations to the definitions from Plaintiffs own dictionaries as "cherry-picked" because they include inconvenient language in the "definitions for a ***different*** term, 'abstract machine.'"  Reply at 3.  But the definitions of "virtual machine" in Plaintiffs chosen dictionaries ***incorporated*** the term "abstract machine," a term found in Plaintiffs own proposed construction.  Schmandt Decl. ¶¶ 94-96, 98; Schmandt Supp. Decl. ¶¶ 38-40.[4]

In addition to contradicting its own extrinsic evidence, Plaintiff also makes unsupported assertions about Defendants' positions.  For example, Plaintiffs reply brief claims that "Defendants do not dispute that certain JavaScript virtual machines do not execute intermediate code."  Reply at 1-2.  This statement is followed by no citation, because it is untrue.  In fact, Defendants' expert explained that "a POSA would understand the claims to mean that the term 'virtual machine' ***excludes*** browser-based functionality like JavaScript engines."  Schmandt Decl. ¶ 92 (emphasis added).

---

[4] The deposition testimony from Mr. Schmandt cited by Plaintiff does not in any way contradict the fact that "abstract machines" have their own machine language, which constitutes intermediate code, as both the dictionaries and Mr. Schmandt himself has made clear.  Reply Ex. IA.

Indeed, as discussed in Defendants' responsive brief, the specification disparages JavaScript as being unsuitable for the invention, indicating that JavaScript engines-the browser components responsible for interpreting JavaScript-are not virtual machines, as Plaintiff contends. Resp. at 3-4. Plaintiff ignores this argument, instead inventing a strawman because Plaintiff desires to accuse products that use JavaScript. Defendants never said that the patent disparages "JavaScript virtual machines" (no such thing exists according to the patent). Defendants said that the patent disparages *JavaScript engines,* which Plaintiff does not appear to dispute. Plaintiff also repeats its claim that "full-featured programming languages" would have included virtual machines, Reply at 2 & n.2, but neither it nor its expert rebut the fact that the patent specifically calls out languages that lack virtual machines, like C++, as being "full featured." Schmandt Deel. ¶90; Schmandt Supp. Deel. ¶24.[5]

**B. "at least one run time file"**

During prosecution, the applicants stated that the **"claimed invention** generates web pages using **two features: a run time engine** and **a database of user settings."** Resp. at 6; Ex. G ('397 FH Jan. 17, 2002 Applicant Response) at 5 (emphasis added). The applicant therefore *defined* the invention's claimed run time files to be two executable files, and *disavowed* other types of run time files. Rather than address these facts, Plaintiff resorts to mischaracterizing Defendants' argument, asserting that the claimed run time files must include non-executable run time files because "Defendants do not allege lexicography or disavowal." Reply at 5. Plaintiff is wrong; Defendants argue both. Plaintiff's repeated attempts to misdirect by pointing to images, audio, and

---

[5] Plaintiff acknowledges that its expert "did not cite to evidence in opining that certain Basic, Lisp, Tel, and Ruby virtual machines did not execute intermediate code" in his initial declaration. Reply at 2 n.3. But it turns out that none of the contemporaneous "technical literature" its expert cites in his supplemental declaration in an attempt to remedy this failure describes these languages as having virtual machines that did not execute intermediate code, demonstrating that he could not support his assertion. Schmandt Supp. Deel. ¶¶ 10-20.

other files are beside the point, because the applicant made clear during prosecution that those files are *not the claimed run time files*.

Plaintiff does not dispute that the run time engine is a run time file that must be executed. Reply at 4. And the `database`-which Plaintiff does not dispute is a run time `file`-is also executed. Indeed, the patent's abstract states that a **"run time file** and an **associated database** [] describe, and **when executed, produce the web page."** '397 patent at Abstract (emphasis added); Resp. at 7. Plaintiff attempts to distance itself from the abstract by suggesting that it is entitled to little weight. Reply at 4-5. But the Federal Circuit has "frequently looked to the abstract to determine the scope of the invention." *See Hill-Rom Co. v. Kinetic Concepts, Inc.,* 209 F.3d 1337, 1341 & n.* (Fed. Cir. 2000) (relying on the abstract of a patent to affirm a claim construction). That guidance is particularly useful where, as here, the Abstract's description is consistent with the prosecution history.

The surrounding claim language also confirms that the claimed run time files are executed. As explained in Defendants' responsive brief, the claimed "generation of virtual machine commands" requires that the run time files be executed because their execution is what causes the claimed "generation." Resp. at 7. This surrounding claim language shows what the run time files *do,* and *how* they tie to the rest of the claim. Plaintiff agrees that claim language is "the most important intrinsic evidence and controls the inquiry" (Reply at 5), but Plaintiff attempts to side-step the surrounding claim language by suggesting that Defendants' construction would introduce redundancy. Reply at 4-5. Plaintiff is wrong, because without the context, one could seek to divorce the claimed run time files from their claimed purpose. Indeed, that risk is acute here because Plaintiff is proposing a construction that would ignore the intrinsic record and capture *any* file that is downloaded or created when the browser is pointed to a website.

Defendants' intrinsic evidence showing that the run time files are executed *by a browser* stands unrebutted. The patent consistently explains that the browser executes the run time files. Resp. at 8-9. Plaintiff argues that this intrinsic evidence is limited to "one embodiment", but Plaintiff cites no language suggesting that execution by a browser is a mere embodiment, nor does Plaintiff cite any language suggesting that anything else could execute the run time files. Reply at 5. Indeed, the patent confirms the claimed run time files must be executed by a browser to display a web page for viewing in that browser. Schmandt Supp. Decl. ¶ 50; *see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.,* 262 F.3d 1258, 1271-73 (Fed. Cir. 2001) (terms may be defined "by implication, through the term's consistent use throughout the [patent's] specification").

### C. "run time engine" / "runtime engine"

The intrinsic evidence confirms that the run time engine both (1) reads information from the database and (2) generates commands to display a web page or website. Resp. at 9-12. Plaintiff fails to explain why it now deviates from this construction (and similar variations) that it offered in prior cases. Instead of "reading and "generating", Plaintiff now asserts that the run time engine need only *utilize* information from the database. Reply at 5-6; Pl.'s Br. at 9-10. Plaintiff is wrong. For the "reading" requirement, Plaintiff accuses Defendants of improperly disregarding claim language in the '397 patent that uses the term "utilizing" rather than "reading." Reply at 5. But, as Defendants explained, this language is not relevant because it relates to the term "'run time file,' **not the claimed 'run time engine.'"** Resp. at 10 (emphasis added). Nowhere does Plaintiff explain why a claim's discussion of the broader term "run time files" should limit the meaning of the narrower term "run time engine." In any case, the fact that the "run time files" utilize information from the database is consistent with one of the run time files (the run time engine) *reading* from the database. Schmandt Decl. ¶ 126.

Second, Plaintiff argues that the "reading" construction is inconsistent with the specification, which allegedly mentions "utilizing the database in ways that do not necessarily involve 'reading,' such as by setting initial values." Reply at 5-6. But as Defendants' expert already explained, the "setting initial values" language in the specification is irrelevant and thus does not obviate the need for, and is not mutually exclusive of, "reading" from a database. Resp. at 10-11; Schmandt Deel. ¶¶ 127-128. Plaintiff does not address this evidence, nor does it offer any evidence to the contrary. *Id.;* Reply at 5-6. Moreover, Plaintiff does not provide any evidence supporting its assertion that "setting initial values" is done without first *reading* the values, or any explanation of *how* to do this. Reply at 5-6.

For the "generates commands" language, Plaintiff is wrong that Defendants' proposed language is superfluous because it supposedly "reiterates functionality already" in the claim language "is configured to generate the web-site." Reply at 6; Pl's Br. at 10. But generating *a web-site* and generating *commands to display a web site* are distinct and complementary functions. Generating a web site is performed *via* generating commands to display a web site. Schmandt Supp. Deel. ¶ 54. As such, Plaintiff's reliance on *Interpols Network Inc. v. Aura Interactive Inc.,* is misplaced, because the limitations here address distinct, non-overlapping behaviors. *See Interpols Network Inc. v. Aura Interactive Inc.,* No. SACV 12-00832-NS (JPRX), 2013 WL 12133639, at *5 (C.D. Cal. June 7, 2013) (rejecting a proposed construction as superfluous because it would have been redundant of overlapping behavior appearing elsewhere in the claim.)

### D. "time lines"

Defendants' proposed construction should be adopted because it clarifies, in plain terms, the lexicographic definition from the specification. Plaintiff's argument against lexicography attacks a strawman and misses the point. For example, Defendants' Responsive Brief cited *Innova/Pure Water* not because the case's purported lexicography is analogous to the present case

(it is not), but for the general proposition that there is no specific syntactic requirement for finding lexicography. Resp. at 13 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1117 (Fed. Cir. 2004)).   In *Innova/Pure Water,* the Federal Circuit panel correctly found no lexicography in a statement that was (i) found in the abstract, not the specification and (ii) not definitional in nature, but instead "reflect[ive of] the applicant's attempt to disclose the broad array of means by which the tube can be connected to the cap." *Innova/Pure Water,* 381 F.3d at 1121.  In contrast, as the court in *Magento* observed, patentee's statement in the specification that "a time line is an independent asynchronous process…" is definitional.  *See XCommerce, Inc. v. Express Mobile, Inc.,* No. 17-cv-02605-RS, 2018 WL 10704439, at *6 (N.D. Cal. Sept. 12, 2018).

Similarly, Plaintiff grossly mischaracterizes the inapposite decision in *Medicines Co.  See* Reply at 6 (citing *Medicines Co. v. Mylan, Inc.,* 853 F.3d 1296, 1306 (Fed. Cir. 2017).  In that case, the panel found that the patentee used a "linguistic formula … to signal the designation of [] defined terms." *Medicines Co.,* 853 F.3d at 1306.  Because the statement at issue departed from this clear, established definitional format, the panel in *Medicines Co.* found that the statement lacked the requisite "clear expression of intent" to find lexicography. *Id.*  In contrast, the '397 patent presents no such systematized format for signaling defined terms, so any difference in syntax between the definitions of "time lines," "UI objects," and "transformations" has no bearing.

Contrary to Plaintiff's assertions, the specification of the '397 patent provides a clear definition of "time lines," which limits the term to "defining the existence of a text button or image object" notwithstanding the fact that the specification describes other objects such as video objects. Each of the figures which relate to functionality of time lines describes only text button or image objects.  *See* '397 patent at Figs. 19, 31, 33, and 34. If the patent owner had intended the term

"time lines" to encompass objects other than text buttons or images, the patent owner could have

so stated, but did not.. *See Dure! Corp. v. Osram Sylvania Inc.,* 256 F.3d 1298, 1304 (Fed. Cir.

2001) (construing the term "oxide coating" to require a primary component that is a binary metal

oxide because the specification explicitly defined the term as such and exclusively exemplified

metal oxides as binary compounds).

### E. "A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:"

The preamble of claim 1 of the '397 patent is limiting because it serves as the antecedent

basis for a limitation in the body of the claim. *See Bio-Rad Labys, Inc. v. 1OX Genomics Inc.,* 967

F.3d 1353, 1371 (Fed. Cir. 2020).  There is no dispute that a term within the claim body-"said

virtual machine" ('397 patent at 65:54-55)-relies on the preamble's recitation of "a virtual

machine capable of generating displays" *(id.* at 65:45-46) for antecedent basis.  This Court has

repeatedly found preambles limiting in similar circumstances, and Plaintiffs only argument to the

contrary-that the claims in those cases allegedly described "structurally incomplete" inventions

(Reply at 8)-is wrong and should be rejected.  For example, in *Digital Retail Apps., Inc. v. H-E-*

*B, LP,* this Court found the preamble limiting "because [it] provides the antecedent basis for

limitations in the body" without regard to any structural incompleteness.  No. 6:19-cv-00167-

ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020).  *See also Collaborative Agreements,*

*LLC v. Adobe Sys. Inc.,* No. A-14-CV-356-LY, 2015 WL 2250391, at *12 (W.D. Tex. May 12,

2015) (finding the preamble limiting because it "contain[s] the antecedent basis for a necessary

component of the claimed invention").

The preamble is also limiting because it is essential for understanding limitations in the

claim body, including the "virtual machine" and "generating a website" limitations recited in the

body of the claim.  For example, claim element l(b) recites the step of "generating a display."  The

preamble gives life and meaning to that limitation because it clarifies that the "virtual machine" is what performs the claimed method step.  Plaintiff raises claim element 1(e), which recites the generation of "virtual machine commands for the display of [web pages]," but this supports Defendants' position because the preamble gives meaning to that limitation by clarifying that it is the "virtual machine," as opposed to some other intermediary device, that generates the display. Finally, as Defendants explained in their responsive brief (and Plaintiff does not dispute in reply), the preamble clarifies that the "websites" generated by the claimed invention are produced on and for "computers having a browser and a virtual machine capable of generating displays."  '397 patent at 65:45-46.

### F. "Application"/ "application"

Plaintiff does not dispute any of the Defendants' extensive citations to the prosecution history establishing that the application distinguished the invention from the prior art on the basis of the Application and Player being "separate." Instead, Plaintiff recycles its arguments that inclusion of the "separate" requirement that was important to getting the claims allowed would "add confusion."  However, Plaintiff still does not explain how or why a jury would be confused about what the term "separate" means in the context of the claimed Application and Player. Plaintiffs expert again opines that the Application and Player may be "integrated" based on one statement in the specification, but he is incorrect because the passage says nothing about whether the Application and Player are separate from one another.  Schmandt Supp. Decl. ¶¶ 66-67

Additionally, Plaintiff does not dispute any of the statements from the prosecution history relied on by Defendants which confirm that the Player "interprets or executes the Application." Plaintiff instead points to two portions of the specification that it claims show that the Player "does not directly interpret or execute the Application," but neither supports Plaintiff's position.  Reply at 9-10.  The first portion discusses an example of the authoring platform 110 producing an

Application and Player.   '755 patent at 8:27-35.  The second portion describes an additional functionality of the Player to "adapt[] the Application to the resources and limitations" of a particular device.  *Id.* at 34:51-64.  Neither the cited passages, nor Plaintiffs expert's discussion, describes anything suggesting that the Player does not interpret or execute the Application.  *See* Schmandt Supp. Decl. ¶¶ 62-65.   Finally, Plaintiffs citation to Claim 21 further supports Defendants' construction as it describes, consistent with Defendants' construction, that the Player "interprets" values defined in the Application.   '755 patent 39:18-21; *see also* Schmandt Supp. Decl. ¶ 63.

### G. "Player" / "player"

Plaintiffs reply brief reveals how little support exists for Plaintiffs proposed exclusion of "device-specific code."   Plaintiff cites the same ambiguous portion of the specification that Defendants' expert previously explained can only reasonably be read to describe the features of the language of the thin client device, not characteristics of the Player.  Schmandt Decl. ¶¶ 161-64; Schmandt Supp. Decl. ¶¶ 71-74.

Next, Plaintiff harps on alleged distinctions between the '755 and '287 file histories (which Plaintiff does not dispute supports Defendants' arguments about "device specific code") and the '044 file history.  Plaintiff argues that "the prosecution history statements in the parent application (that issued as the '755 patent) are not applicable in the descendent '044 patent," however, that directly contradicts the Plaintiffs assertions to the examiner during prosecution of the '044 patent: "The present application is continuation application that claim priority to US Patent Application No. 12/936,395, which issued as US Patent No. 9,063,755. ***Applicants respectfully submit that the present application is patentable/or at least the reasons as those patents."*** Ex. V '044 File History, 2017-09-17 Prelim. Amend. (emphasis added).  Following that statement, the '044 patent examiner issued the patent without any rejections to the claims.  Plaintiff should not be permitted

to make an *express representation* to the Patent Office that the '044 patent should be allowed for the same reasons as the '755 patent and then turn around and argue the reasons the '755 patent was allowed should not apply to the '044 patent.  Otherwise, Plaintiff would construe the claims "one way in order to obtain their allowance and in a different way against accused infringers." *See Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1384 (Fed. Cir. 2005); *see also Sunovion Pharm., Inc. v. Teva Pharms. USA, Inc.,* 731 F.3d 1271, 1276 (Fed. Cir. 2013) ("[P]rosecution history may be critical in interpreting disputed claim terms because it contains … any express representations made by the applicant regarding the scope of the claims.").  Plaintiffs citation to the *Ventana* case is inapposite, as that case involved different claim language in the child patent.  *Ventana Med. Sys., Inc. v. Biogenex Lab'ys., Inc.,* 473 F.3d 1173, 1182 (Fed. Cir. 2006).  Here, the exact same claim language, "Player" or "player," is being construed.

Finally, for the reasons discussed above, the construction of Player should include the requirement that the Player and Application are "separate" and that the Player "interprets or executes" the Application.

**Expedia Position Regarding Claim 12 of the '755 patent:**

The patentee clearly, unambiguously, and unequivocally stated that the Player of Claim 12 of the '755 patent is generated or produced by the authoring tool, including in the context of traversing the McCain, Paddon and Benedetti references.  Contrary to Plaintiffs assertion, patentee's statements constitute a disclaimer regardless of whether it would have been necessary to distinguish the prior art.  All that is required for a disclaimer to arise is a "clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms. Inc.,* 438 F.3d 1123, 1136 (Fed. Cir. 2006).  Patentee's disavowal could not have been clearer: "Independent Claims 1 and 12 each recite an authoring tool that produces a (device-dependent) Player and a

(device-independent) Application." Ex. P (Jan. 16, 2014 Reply to Office Action of Oct. 18, 2013) at 11.

This was far from the only time patentee confirmed that the Player was generated or produced by the authoring tool. During prosecution, patentee stated no fewer than **thirteen times,** including at least once in each of the five substantive responses, that the Player was generated or produced by the authoring tool. For example, in response to an office action dated March 6, 2013, patentee stated that the authoring tool "generates and provides both an Application and a Player...." Ex. Q (Nov. 26, 2014, Appeal Brief) at 8-9; *see also* Ex. O (Mar. 6, 2013, Reply to Office Action of Oct. 11, 2012) at 8, 10-11, 12 (three times), 13, 15; Ex. W (May 30, 2013, Reply to Office Action of April 1, 2012) at 4; Ex. X (Sept. 26, 2013, Reply to Office Action of April 1, 2013) at 9, 10; Ex. P (Jan. 16, 2014 Reply to Office Action of Oct. 18, 2013) at 9, 11; and Ex. Q (Nov. 26, 2014, Appeal Brief) at 8). The Examiner cited this exact feature as a reason for allowing the claims. Ex. Y (May 4, 2015, Notice of Allowance) at 6-7. Patentee's clear, repeated statements that the claims of the '755 patent require a Player produced by the authoring tool are a clear and unmistakable disclaimer.

### H. "registry"

Plaintiff still refuses to tell the Court or Defendants what it believes the plain and ordinary meaning of the term "registry" is, or what portion of Defendants' proposed construction is allegedly inconsistent with the plain and ordinary meaning. While Plaintiff will not disclose the contours of its dispute with the Defendants' proposed construction, the Court should resolve it. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,* 815 F.3d 1314, 1319-20 (Fed. Cir. 2016) (holding that the district court erred by not resolving the claim construction dispute between the parties about the meaning of the terms "portable" and "mobile" and instructing the jury to apply their plain and ordinary meanings).

In its reply, Plaintiff appears to abandon the objection raised in its opening brief relating to the "on a computer" portion of Defendants' proposed construction.   But Plaintiff continues to argue that Defendants' proposed construction is too narrow and only applies to one embodiment. Reply at 12.   Plaintiff fails to explain, however, why this is the case or identify any registries that are *not* a database, XML file, or PDL file.[6]   Indeed, its expert, Mr. Weadock, did not provide any response to Defendants' expert opinions on this term at all.   Schmandt Supp. Decl. ¶ 76.

Plaintiff argues that this definition is for a "web component registry" not "registry" more generally, but "web component" simply describes what is stored in the registry, not what is a "registry."   Moreover, the plain language of the claims indicates that the claimed registry stores symbolic names for web components, i.e., it is a web component registry.   *See, e.g.,* '755 patent at claim 1.   In any event, nothing in Defendant's proposed construction limits what can be stored in the claimed registry.

Additionally, Plaintiff argues, **and agrees,** that "[t]he '755 Patent uses the term 'registry' in a generic matter, referring to a database."[7]   Reply at 13.   Thus, if anything, Defendant's proposed construction of "registry" appears to be broader than Plaintiff's because it is not limited to a database; it also encompasses an XML file or a PDL file, consistent with the express language of the specification.   Defendants' proposed construction should be adopted.

---

[6] As a result, Defendants' respectfully assert that the district court's conclusion in *Express Mobile, Inc. v. GoDaddy.com,* No. 1:19-cv-01937 (D. Del. June 1, 2021) (Ex. J at 17-19) regarding this claim term was incorrect.

[7] Given this argument by Plaintiff, its separate critique of Defendants' proposed construction for allegedly limiting "'registry'-a thing-based on where it *resides*" (Reply at 13) is misplaced and inconsistent with Plaintiffs own argument that a database is a registry.   Indeed, a database, XML file, and PDL file, are all things, not specific locations.   To the extent Plaintiff intended this argument to be a critique of the "on a computer" portion of Defendants' construction, as Defendants' explained in their responsive brief, the specification of the '755 patent does not contemplate any registries that are not based on a computer and it is not clear how such a registry would even work in the context of the claimed invention.   Resp. at 24.

### I.  "UI object"

The Court should adopt Defendants' proposed construction, which reflects the specification's express definition of "UI object" as "referred to herein." *See* '755 patent at 14:15-18.  Plaintiff fails to cite to any example that contradicts the specification-provided definition.  The phrase "without limitation" does not relate to the breadth of the term but rather to the fact the specification employs other terms to refer to various species of the genus, such as text fields, text buttons and other forms of input or output UI objects. *See id.* at 14:22-51.[8]

### J.  "An authoring tool configured to … a Player"

Plaintiff argues that the claimed "Player" is completely untethered to the claimed "authoring tool."  The intrinsic record demonstrates otherwise:  the authoring tool is configured to ***produce*** the "Player." ***First,*** as explained in Defendants' responsive brief, the "Player" limitation was added during prosecution as part of an amendment that the patentee described as ***"identical"*** to amendments made to the claims of the related '755 patent, with cross-reference to that file history.  Resp. at 28.  During prosecution of the '755 patent, the patentee added the limitation that the "authoring tool" be configured to "produce a Player . . . ." *Id.,* Ex. 0.  Plaintiffs argument that the amendment to the '287 patent did not have the same effect as the '755 amendment (Reply at 15) is therefore directly contradicted by the file history itself.

***Second,*** the claim is structured such that the "Player" is recited at the same level as the various tasks performed by the "authoring tool"-e.g., to "define a (UI) object" and "produce an Application."  Resp. at 27.  Plaintiff concedes that the Patent Office examiner structured the claim that way-but, citing the MPEP, speculates that the examiner may have done so in this and other

---

[8] Plaintiff incorrectly asserts that the parties agree that "UI object" has a plain and ordinary meaning.  There is no such agreement.  Moreover, as noted in Defendants' Responsive brief, Plaintiff attempts to improperly broaden the term "object" by pointing to an incorrect definition of object that is directed to graphics rather than computer programming. Resp. at 26 n.16.

cases "unilaterally" and "unwittingly."  Reply at 15.  But there was nothing unilateral about the Patent Office's action: Plaintiff authorized the Examiner to make the amendment and declined to modify the amendment when offered to do so.  *See* Resp. at 28-29; Ex. U at 6, 8.  Nor was the amendment "unwitting":  the MPEP recognizes the use of "plural indentations to further segregate sub-combinations or related steps," and the Patent Office is authorized "[i]n general," to print the patent "follow[ing] the format used" unless it is "unduly complex."  MPEP §608.0l(m).  Here, there is nothing complex about the format of claim 1 of the '287 patent:  it recites several limitations that describe actions taken by the "authoring tool," including the "Player" limitation, at the same level of indentation.  *See* '287 patent at 37:63-38: -37.  The Examiner's amendment changing the indentation of the "Player" limitation-which was authorized by the patentee-clarified that the "Player" is something that the "authoring tool" is configured to produce, consistent with Defendants' construction.

Finally, Plaintiff cites the claim's use of commas and semicolons in an attempt to overcome its prior statements to the Patent Office.  But as Defendants explained, and contrary to Plaintiff's assertion, semicolons are used throughout the claim to distinguish between phrases, including to distinguish between the two ways a defined UI object can be selected and the two types of code an authoring tool is configured to produce.  *See* Resp. at 29-30.  Plaintiff's citation to *Shotkam* is distinguishable because the claim at issue in *Shotkam* only uses semicolons to distinguish between claim elements, whereas claim 1 of the '287 patent uses semicolons *within* functions of the claim elements to distinguish between phrases.  *See Shotkam LLC v. Tachyon, Inc.,* No. H-20-1070, 2021 WL 23311, at *2 (S.D. Tex. Jan. 4, 2021); *see also* Resp. at 29; '287 patent at 38:1-5.

## III.   CONCLUSION

For the foregoing reasons, Defendants request that the Court adopt Defendants' proposed constructions.

Dated: July 23, 2021

*Isl Heidi L. Keefe*
Heidi L. Keefe
Elizabeth Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone:     (650) 843-5000
Fax:  (650) 849-7400
hkeefe@cooley.com

Phillip E. Morton
COOLEY LLP
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800
Facsimile:    (202) 842-7899

Deron R. Dacus (TX 00790553)
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Defendant Facebook, Inc.*

Dated: July 23, 2021

*Isl Jeffrey J. Catalano*
Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Jeffrey J. Catalano
IL Bar No. 6289197
Email: jcatalano@freebom.com
Troy D. Smith
IL Bar No. 6297657
Email: tsmith@freebom.com
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 360-6000
Facsimile: (312)-360-3520

Sarah A. Gottlieb
FL Bar No. 125232
Email: sgottlieb@freebom.com
FREEBORN & PETERS LLP
201 North Franklin Street, Suite 3550
Tampa, FL 33602
Telephone: (813) 488-2920

*Attorneys for Defendants Expedia, Inc. and HomeAway.com, Inc.*

Dated:  July 23, 2021                    <u>Isl Will Melehani</u>
                                         Melissa R. Smith
                                         Texas Bar No. 24001351
                                         melissa@gilliamsmithlaw.com
                                         GILLIAM & SMITH, LLP
                                         303 South Washington Ave.
                                         Marshall, TX  75670
                                         Tel: (903) 934-8450
                                         Fax: (903) 934-9257

                                         Jared Bobrow (pro hac vice)
                                         jbobrow@orrick.com
                                         ORRICK, HERRINGTON & SUTCLIFFE
                                         LLP
                                         1000 Marsh Road
                                         Menlo Park, CA  94025-1015
                                         Tel: (650) 614-7400
                                         Fax: (650) 614-7401

                                         Will Melehani (pro hac vice)
                                         wmelehani@orrick.com
                                         ORRICK, HERRINGTON & SUTCLIFFE
                                         LLP
                                         The Orrick Building
                                         405 Howard Street
                                         San Francisco, CA  94105-2669
                                         Tel: (415) 773-5700
                                         Fax: (415) 773-5759

                                         *Attorneys for Defendant eBay Inc.*

Dated:  July 23, 2021                    <u>Isl J. Mark Mann</u>
                                         J. Mark Mann
                                         State Bar No. 12926150
                                         mark@themannfirm.com
                                         G. Blake Thompson
                                         State Bar No. 24042033
                                         blake@themannfirm.com
                                         **MANN | TINDEL | THOMPSON**

201 E. Howard St.
Henderson, Texas 75654
Tel: (903) 657-8540
Fax: (903) 657-6003

Ameet A. Modi *(pro hac vice)*
amodi@desmaraisllp.com
**DESMARAIS LLP**
101 California Street
San Francisco, California 94111
Tel: (415) 573-1900
Fax: (415) 573-1901


John M. Desmarais *(pro hac vice)*
jdesmarais@desmaraisllp.com
Jun Tong *(pro hac vice)*
jtong@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

*Attorneys for Defendant Google LLC*


Dated: July 23, 2021                    *Isf Adam R. Brausa*

DARALYN J. DURIE *(Pro Hae Vice)*
ddurie@durietangri.com
TIMOTHY C. SAULSBURY *(Pro Hae Vice)*
tsaulsbury@durietangri.com
ADAM R. BRAUSA *(Pro Hae Vice)*
abrausa@durietangri.com
VERA RANIERI *(Pro Hae Vice)*
vranieri@durietangri.com
RAGHAV R. KRISHNAPRIYAN *(Pro Hae Vice)*
rkrishnapriayn@durietangri.com
ERIC C. WIENER *(Pro Hae Vice)*
ewiener@durietangri.com
**DURIE TANGRI LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

MOON HEE LEE *(Pro Hae Vice)*
mlee@durietangri.com
**DURIE TANGRI LLP**
953 East 3rd Street
Los Angeles, CA 90013
Telephone:    213-992-4499

Facsimile:      415-236-6300

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone:      903-934-8450
Facsimile:      903-934-9257

*Attorneys for Defendants*
*ATLASSIAN CORP. PLC and*
*ATLASSIAN, INC.*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 23, 2021 all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Ameet A. Modi*
Ameet A. Modi